# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS )
2210 Anvil Lane )
Temple Hills, Maryland 20748 ) **Civil Action No: 07-1813 (RMU)**
(301) 630-5062 )
)
) **ADMENDED COMPLAINT**
Plaintiff, ) **CERTIFICATION AND NOTICE OF**
) **CONSTITUTIONAL QUESTION**
vs. )
)
SHELIA C. BAIR )
CHAIRMAN, )
FEDERAL DEPOSIT )
INSURANCE CORPORATION, )
550 - 17th Street, N.W – MB-6028 )
Washington, D.C. 20429 )
(202) 898-6974 )
**AND** )
SHELIA C. BAIR )
**In her individual capacity** )
FDIC 550 - 17th Street, N.W )
MB-6028 )
Washington, D.C. 20429 )
(202) 898-6974 )
**AND** )
Douglas R. Fahey )
3716 Dalebrook Drive )
Dumfries, Virginia 22015-1804 )
(703) 583-7528 )
**AND** )
Jenekia J. Johnson )
1414 Colony Road )
Oxon Hill, Maryland 20748 )
)
Defendants )
)
**Registered Agent:** )
Robert Feldman, Executive Secretary )
FDIC )
550 - 17th Street, N.W )
Washington, D.C. 20429 )
(202) 898-6974 )
_____ )

## AMENDED COMPLAINT FOR MONEY DAMAGES and DECLARATORY
## and INJUNCTIVE RELIEF

Now Comes, Yolanda C. Gibson-Michaels (prose), Plaintiff in the above-entitled complaint and files an **Amendment** and provides **Notification to the Court** and add a claim against FDIC Chairman Sheila C. Bair named Defendants that Plaintiff asserts her right under **Rule 5.1. Constitutional Challenge** drawing into question the constitutionality of the Federal wiretap statute and the 1st, 2ND, 5TH, and 14th Amendment in support of her complaint for Money Damages, Declaratory and Injunctive Relief in violation of § 8 U.S.C.-119, 2515, § 2518. This action draws into a **Challenge to the constitutionality** of provisions under Title 18, United States Code, §2520, 42 U.S.C. §1985(3) and §1986, 47 U.S.C. §605, and under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the U.S. Constitution.

The United States District Court in accordance to **28 U.S.C. § 2403**, certify to the Attorney General of the United States that there is a constitutional challenge to the following Federal statutes: **Title 18, United States Code, §2520, 42 U.S.C. §1985(3) and §1986, 47 U.S.C. §605, and under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the U.S. Constitution.**

### I.     JURISIDICTION

The jurisdiction of this court is based upon 18 U.S.C. §2520, 28 U.S.C. §1331(a) and §1343(l), (2), and (4), and the aforementioned Constitutional provisions. See Title 18, United States Code, §2520, 42 U.S.C. §1985(3) and §1986, 47 U.S.C. §605, and under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the U.S. Constitution. 18 U.S.C. §2520, 28 U.S.C. §1331(a) and §1343(l), (2), and (4). See Bartnicki v. Vopper 99-1687, No. 99-1728, 532 U.S. 514 (2001).

2

## I.    <u>FEDERAL QUESTIONS</u>

1)      Does the Federal Deposit Insurance Corporation, et.al., Douglas R. Fahey, Shelia C. Bair and Jenekia J. Johnson have the right to abridge Plaintiff of her rights under the First Amendment to the U.S. Constitution which provides that **"Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof..."** Does the wiretap statute provide protections for Federal Government violations of the statute?

2)      Does the wiretap statute provide protections for Private Security Guard Federal contractors in violations of the statute?

3)      Does the wiretap statute provide protections for unlicensed Private Security Guard Federal contractor Douglas R. Fahey in violations of the statute?

4)      Does the wiretap statute exclude Federal and Private Corporations, and contractors from the **<u>strict evidentiary rule of the Wiretap statue</u>**?

5)      Does the statute provide First Amendment protection to speech uttered inside a closed door office (**<u>reasonable expectation of privacy</u>**)?

6)      Plaintiff questions whether the imposition of civil liability under 18 U.S.C. 2511(1)(c) and (d) for continuous use, possession, disclosure, duplication of contents of an illegally intercepted communications, whereby unlicensed named defendant Douglas R. Fahey (contractor) knows or has reason to know that the interception was unlawful, participated, encouraged?

3

8)      Plaintiff questions whether the Federal Deposit Insurance Corporation, Douglas R. Fahey, and named Defendants are exempt from adherences to strict statutory provisions under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. 2510 et seq.

9)      Does the statute provide First Amendment protection to speech that discloses the contents of an illegally intercepted communication?

## II.    STATEMENT – Constitutional Challenge

This case involves a constitutional challenge to provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510 et seq. (Title III), the principal federal wiretapping statute. Title III prohibits the interception of wire, oral, and electronic communications. The provisions at issue in this case-18 U.S.C. 2511(1)(c) and (d)-bar use and disclosure of the contents of illegally intercepted communications by any person who knows or has reason to know that the communications were intercepted in violation of Title III.  See S. Rep. No. 1097, 90th Cong., 2d Sess. 67 (1968) (1968 Senate Report). Title III provides a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." **Gelbard** v. **United States**, 408 U.S. 41, 46 (1972). See also Pub. L. No. 90-351, Tit. III, § 801, 82 Stat. 211 (Title III designed "to protect effectively the privacy of oral and wire communications"). Title III bars the unauthorized acquisition of wire, oral, and electronic communications through the use of electronic, mechanical, and other devices.

4

This Complaint draws into a **Challenge to the Constitutionality** of provisions under Title 18, United States Code, §2520, 42 U.S.C. §1985(3) and §1986, 47 U.S.C. §605, and under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the U.S. Constitution i.e.**(God-given rights innate to each individual or inherent to mankind).** The jurisdiction of this court is based upon 18 U.S.C. §2520, 28 U.S.C. §1331(a) and §1343(l), (2), and (4), and the aforementioned Constitutional provisions. The matter in controversy, exclusive of interest and costs, exceeds $10,000.

## PARTIES

1.      Plaintiff **YOLANDA C. GIBSON-MICHAELS** is a citizen of the United States, Federal employee; and a resident of Prince Georges County (P.G) Maryland, residing at 2210 Anvil Lane, Temple Hills, Maryland 20748.

2.      **Defendant Shelia Bair**, is the Chairman of the Federal Deposit Insurance Corporation within the meaning of 42 U.S.C. §2000e-16. Plaintiff files a claim against the **FDIC in its Corporate capacity** and against the **Shelia C. Bair** in her **individually capacity**. Chairman Bair's predecessor is former Donald E. Powell. At all times relevant hereto, the employees mentioned herein were the Chairman of FDIC, individuals, employees, contractors, interns, and agents of the FDIC and were acting within the scope and course of their employment and **individual capacities**; in violation of strict mandatory requirements of the wiretap statute.

3.      **Douglas R. Fahey**, (Defendant) impersonated a United States Federal Investigator, employed under a 'Fictitious' contract Securiguard and USEC Services Corporation contract while (Acting under the color of law) and resides at 3716 Dalebrook Drive, Dumfries, Virginia 22015-1804, (703) 583-7528.

5

The Metropolitan police confirmed that Douglas R. Fahey was unlicensed  DOJ Criminal Division confirmed that Fahey didn't have a Court or the FDIC didn't have a court Order, authority to engage into an interception of oral communications with the use of a tape recorder (Sony); **evidence attached hereto with the Amended complaint**.

The Federal Deposit Insurance Corporation (FDIC) confirmed by letter dated September 13, 2006, page 2, of the FDIC response to U.S. Senator Barbara A. Mikulski, that: **"The facts are that in 2004 a contract investigator [Douglas R. Fahey] with the FDIC allowed another employee to tape record a conversation with Ms. Gibson-Michaels in order to help management investigate allegations of misconduct."** Douglas R. Fahey (Defendant)(unlicensed) impersonator did not obtain Court Authority certified by a United States Magistrate Judge to **possess**, **use**, **duplicate**, **engage** and/or **allow** another private citizen Jenekia J. Johnson to engage into an unauthorized interception of Plaintiffs' oral communication. Specifically, the FDIC EEO investigator Barry Cohen affirmed that Douglas R. Fahey was not employed by Securiguard.  FDIC answers to complaint 06-cv-1940 at Id.

4. **Jenekia J. Johnson**, (Defendant), 1414 Colony Road, Oxon Hill, Maryland 20748, 301-567-3040, a 25-year old intern involved in a Federal Theft. Ms. Johnson admitted **she lied on tape**, **submitted false affidavits**, and **willfully entrapped Plaintiff by pre-text in which she stated she LIED on April 14-15, 2004**.  The FDIC and Defendants continues to use evidence intercepted by an unlicensed contract security guard (Douglas R. Fahey), to and including unlawful **duplication**, **possession**, **release**, and **reliance upon** evidence intercepted and used to involuntary remove Plaintiff from Federal services on **January 21, 2005** and **March 31, 2006**.

Plaintiff has incurred irreparable damages; continues to be harmed by willful use of evidence, religious violations, age, race, whistleblower retaliation, harassment, stigma of being unlawfully barred from the FDIC; defamation of her character due to the continued **existence**, **use**, **possession** of **intercepted evidence**, **recordings**, **duplication**, and the Defendants unauthorized reliance upon evidence in violation of 18 U.S.C. §119.

## PLAINTIFF ESTABLISHED STANDING UNDER ARTICLE III

Plaintiff established she has standing to sue. Plaintiff satisfied requirements and met elements of "case" or "controversy" requirement of Article III. See **Bennett** v. **Spear**, __ U.S. __, 117 S. Ct. 1154, 1163 (1997) and **Lujan** v. **Defenders of Wildlife**, 504 U.S. 555, 560 (1992).

> **An "injury in fact" -- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; second, there be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ...the result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."**

## STATEMENT OF FACTS

1. On or about **April 14, 2004** – Plaintiff a former employee with the Federal Deposit Insurance Corporation (FDIC) was approached at her former place of employment, 1717 H Street, N.W., Washington, D.C. by JENEKIA JOHNSON a 25-year old intern involved in a Federal theft. Ms. JOHNSON alleged that she was a victim of Federal theft. Plaintiff acting in her approved capacity as a team leader, promptly escorted Ms. Johnson to a closed door office to protect Ms. Johnson's privacy. Plaintiff provided words of wisdom, examples of her life, advice and **quoted a few Bible scriptures as examples**.

7

2. On or about **April 15, 2004**, JENEKIA JOHNSON, the approached Plaintiff verbally stated that, **"She I Lied."** Here again, Plaintiff promptly escorted Ms. Johnson to a **closed door office to protect Ms. Johnson's privacy**. Plaintiff was unaware that Ms. Johnson unlawfully, intentionally and knowingly possessed a Sony cassette tape recorder which is defined as an electronic, mechanical and other devices, to wit, bugging and receiving devices, knowing and having reason to know that the design of said devices rendered them primarily useful for the purpose of the surreptitious interception of wire, oral and electronic communications, and that said devices and components thereof had been and would be sent through the mail and transported in interstate commerce. See **U.S.C. Title 18, United States Code, Sections 2512(1)(b) and 2.**

3. On or about **April 19, 2004 (2:22pm)**–Plaintiff received an e-mail from Douglas Fahey (unlicensed FDIC contractor) requested investigative interview with Gibson-Michaels regarding conversation she had with student intern Johnson on **April 14-15, 2004** which made the intern **"Feel Threaten"** The statement of **"Feeling Threaten"** was stated by Plaintiffs' second-lined supervisor James T. Lantelme, Assistant Director, Legal Division (FDIC) by stating that: **"A Bit Later I asked Jenekia if she felt threaten by Yolanda…"** (See Exhibit A)

4. On or about April 14, 2004 Jenekia Johnson reported the conversation she initiated with Plaintiff on April 14-15, 2004. James T. Lantleme, Assistant Director affirmed by sworn affidavit that after speaking to Ms. Johnson he stated that: ***"A Bit Later I asked Jenekia if she felt threaten by Yolanda, and she said that she did."*** James Lantelme contacted William Kmentz (Security) and conveyed to Kmentz that Plaintiff "Threaten" Ms. Johnson instead of making her "feel threaten" initiated by James T. Lantelme.

5. On or about **April 19, 2004 (4:04pm)** – Plaintiff sent e-mail to her former first-line supervisor Carl Polvinale regarding both interns alleged theft. Plaintiff informed Polvinlae that she cooperated and provided Douglas Fahey with a statement. Mr. Polvinale concurred that a bible verse is not a threat.

6.    On or about **April 21, 2004** – Plaintiff affirmed that Ms. Johnson provided her with false information on April 21, 2004. Ms. Johnson informed her that Doug Fahey asked her how did she feel after speaking to Plaintiff.

7.    On or about **April 21, 2004** –James T. Lantelme e-mailed and hand-carried a memorandum to Plaintiff re: Mandatory attendance at Investigative Meeting. J.Lantelme stated, that: "***I direct you to meet with Mr. Fahey at his office, and I direct you to cooperate in the interview. 'Failure to attend the interview and cooperate will result in disciplinary actions being taken against you."*** Plaintiff was forced, directed; coerce to attend the investigative interview.

8.    On or about **April 22, 2004 (8:26am)**–D. Schull (Union Representative) requested a delay in meeting. Schull requested a statement from intern. What was the charge against me, or what specifically were the charges" Douglas Fahey (contractor) didn't respond.

9.    On or about **April 22, 2004 (10:29am)** –James Lantelme responded to Plaintiff. Lantelme wrote that: **"I have received your emailed, your request are duly noted"** Lantelme threaten Plaintiff with disciplinary actions if she didn't meet with contract employee Doug Fahey.

10.    On or about **April 26, 2004** –J.Lantelme e-mailed and hand-carried a memorandum to Plaintiff with an order, threat, and coherence to cooperate, and meet with Douglas Fahey on April 28, 2004 re investigative interview. Mr. Lanteleme stated that:"**Failure to meet would result in disciplinary actions against you."**

11.    On or about **April 29, 2004** – Plaintiff e-mailed union re: Draft summary of investigative interview. Discussed Johnson's recording her own self stating that **she lied on tape** (False Statement), cheated on time and attendance.

12.    On or about **May 11 2004** –Plaintiff sent rebuttal to James Lantelme re: illegal tape recording. **Intern stated that she lied on tape**, nepotism of intern working for aunt, defrauding the government. Fahey expressed embarrassment as intern stated that she lied which was said on tape "self-incrimination"

13.     On or about **June 1, 2004** –Plaintiff sent letter via e-mail and hand carried ltr. to the FDICs OIG Patricia Black regarding violation of 18 U.S.C., Section 119-Interception of Oral Communication by summer intern and contractor; not Federal Agent as required under Omnibus Street Crime Act, Court Order, and purpose of Federal Crime; not bible verse.

14.     On or about **June 9, 2004** –Plaintiff received ltr. From James Lantelme **"Proposed 10-Day suspension from duty without pay"**

15.     On or about **June 29, 2004** –Plaintiff sent letter to Special Agent Baker **re: illegal taping Case No:4003351**. Plaintiff requested that Baker reopen illegal recording to include Identity Theft Title 22, subtitle I, Chapter 32, and Subchapter III. Identity Theft and Assumption Deterrence Act, 18 U.S.C., section 1028.

16.     On or about **August 17, 2004** –E.Bovenzi directed Plaintiff to report to her office. Erica Cooper Bovenzi presented to Plaintiff a memorandum re*:"Notice of Decision – Five (5)* *Calendar Day Suspension"*

17.     On or about **November 4, 2004** – Plaintiff received FPS Police report from Agent Moore regarding illegal interception of oral communication CCN: NO4003351.

18.     **December 22, 2004** – Metropolitan Police Department Ms. Gray confirmed that Douglas Fahey (contractor) was not certified or pending certification as a private investigator.

19.     **December 8, 2005** DOJ Criminal Division confirmed that the FDIC nor did Douglas Fahey a Court Order to engage into wire tap or the interception of Gibson-Michaels communication.  Plaintiff has suffered two involuntary removals on **January 21, 2005** and **March 31, 2006**, deprived of property rights, salary, and critical medical benefits for severely autistic son with seizure disorder; as Defendants continue to violate the statue.

### PLAINTIFF DEMANDS A JURY TRIAL

12/10/07

10

## CLAIMS

1.     Defendants' interception and disclosure of Plaintiff's wire communication was in violation of 47 U.S.C. §605.

2.     Defendants, procurement of interception disclosure, use, possession, continued use of evidence against Plaintiff on December 19, 2005, March 19, 2007 remains in possession of named defendants which constitute continuous violation of the statute of the use of Plaintiffs wire and oral communications,  herein, done after June 18, 1968, was in violation of 18 U.S.C. §2511.

3.     Defendants' procurement of interception disclosure, and use, and their interception, disclosure, and use of Plaintiff's wire and oral communications during the period in question, continuous use, duplication, continues to deprive Plaintiff of her rights of free speech, employment, benefits, income, and freedom of speech under the First Amendment, and her right to privacy and security against unreasonable searches guaranteed by the First, Fourth, and Ninth Amendments.

4.     Defendants' procurement of interception, disclosure, and use, and their interception, disclosure, and use of Plaintiff's wire and oral communications, further deprived Plaintiff of her rights to due process of law and effective counsel guaranteed by the Fifth and Sixth Amendments.

5.     Defendants' conspiracy against Plaintiff continues to violate her civil and constitutional rights to due process, equal protection, freedom of speech and association, and privacy, under the First, Fifth, Sixth, and Ninth Amendments.

6.     The Federal Deposit Insurance Corporation (FDIC) Defendants' procurement of an unlicensed contractor Douglas R. Fahey and Jenekia J. Johnson (Defendants) to unlawfully infiltrate the Federal Deposit Insurance Corporation (FDIC) Washington, D.C. as both were prohibited undocumented individuals only served to collectively deprive Plaintiff of her property rights, employment, entrap, violated her rights Guaranteed by the First, Fourth, Fifth, Sixth, and Ninth Amendments.

7.     Defendants FDIC, Douglas R. Fahey and Jenekia J. Johnson et.al,  are civilly liable to Plaintiff for the illegal acts attributable to them as alleged herein, and are liable under the doctrine of *respondeat superior* for the illegal acts as alleged herein of other named and unnamed Defendants who committed said illegal acts in the scope of their unlawful fictitious employment at the FDIC.

8.     FDIC and named Defendants deprived Plaintiff of her civil, constitutional, and statutory rights under 42 U.S.C. §l985 (3), in that their plans and acts constitute conspiracies to deprive Plaintiff of equal protection of the laws.

9.     FDIC Defendant by neglecting or refusing to prevent or aid in the prevention of the occurrence of the events described in this complaint -- although they know the said events were about to occur and although they had the power to prevent or aid in the prevention of their occurrence.

**WHEREFORE,** Plaintiff prays that judgment is granted against each Defendant in the sum of $100.00 per day of interception and disclosure of Plaintiff's wire communication, done April 14-15, 2004, 3005, 2006, 2007 (continuous) in violation of 47 U.S.C. §605; and demands a Jury Trial in accordance to the Title III Statute.

a. Against each Defendant in the sum, of $100.00 per day of procurement of interception, disclosure, or use, or interception disclosure, or use of Plaintiff's oral or wire communication, done April 14-15, 2004, 3005, 2006, 2007(continuous), but in any event no less than $100,000, as liquidated damages, pursuant to 18 U.S.C. §2520

b. Against Defendants jointly for punitive damages in the sum of <u>$10,000</u> (Ten million dollars) in willful violation of 18 U.S.C. §2520 (b).

c. Against Defendants jointly for reasonable attorney's fees and other costs reasonably incurred in connection with this action, pursuant to 18 U.S.C. §2520 (c).

e. Plaintiff prays for judgment against FDIC and named Defendants in the amount of <u>$500,000</u> for conspiring to deprive Plaintiff of the equal protection of the laws, pursuant to 42 U.S.C. §1985 (3); violation of Article III, violation of religious speech.

f. Plaintiff have judgment against the Defendants jointly in the sum of <u>$500,000</u> for violation of her rights under the First, Fourth, Fifth, Sixth, and, Ninth Amendments to the U.S. Constitution.

g. This court enjoin the Defendants from any further unlawful procurement of interception, use, and disclosure, and any further interception, use, and disclosure of Plaintiff's oral and wire communications.

h. FDIC, Defendants Douglas R. Fahey and Jenekeia J. Johnson be ordered to turn over to Plaintiff's all records, logs, tapes, files, and any other material evidence of the unlawful interception of electronic surveillance of Plaintiff oral communication.

i. This court declare the actions of defendants as herein described to be in violation of 18 U.S.C. §2511, 42 U.S.C. §1985 (3) and 1986, and 47 U.S.C. §605, and of the First, Fourth, Fifth, Sixth, and Ninth Amendments to the U.S. Constitution.

j. This court grant such other and further relief as to it may

Respectfully submitted,

_Yolanda C. Gibson-Michaels_    12/10/07

Yolanda C. Gibson-Michaels (prose)
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

## CERTIFICATE OF SERVICE

I hereby certify that on this **10th day of December, 2007**, a copy of the foregoing

**ADMENDED COMPLAINT FOR MONEY DAMAGES and DECLARATORY** and

**INJUNCTIVE RELIEF** was mailed to:

United States General Attorney, Michael B. Mukasey
Office of the Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC 20006

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia 20190

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C. 20530

SHELIA C. BAIR
CHAIRMAN, FEDERAL DEPOSIT
INSURANCE CORPORATION,
550 - 17th Street, N.W – MB-6028
Washington, D.C. 20429
(202) 898-6974

SHELIA C. BAIR
In her **individual capacity** at the
FEDERAL DEPOSIT
INSURANCE CORPORATION
550 - 17th Street, N.W – **MB-6028**
Washington, D.C. 20429

Douglas R. Fahey
3716 Dalebrook Drive
Dumfries, Virginia 22015-1804
(703) 583-7528

Jenekia J. Johnson
1414 Colony Road
Oxon Hill, Maryland 20748
301-567-3040

**Registered Agent**:
Robert Feldman, Executive Secretary (FDIC)
Washington, D.C. 20429
(202) 898-6974

3

## Certification Notice of Constitutional Question

### YOLANDA C. GIBSON-MICHAELS

vs.

### Federal Deposit Insurance Corporation et.al, Sheila C. Bair in her Corporate and individual capacity, Douglas R. Fahey, Jenekia Johnson, et.al., and named Defendants

Plaintiff, Yolanda C. Gibson-Michaels hereby provides certification upon

Attorney General Michael B. Mukasey in that the Attorney General take **Notice**

**pursuant to the Civil Rules of Procedure, 5.1** of the United States District Court, that

Plaintiff hereby files a **Challenge to the Constitutionality** of the wiretap statute; and

take **Notice** herewith to respond to **Federal Questions of statutory violations** and

**FURTHER TAKE NOTICE THAT** the an **Amended Complaint** has been filed with

the United States District Court on **December 10, 2007**; and that Federal Deposit

Insurance Corporation (FDIC) et.al., and named Defendants have not filed an Answered

to Plaintiffs original complaint filed **September 9, 2007**.

1)    This case involves a constitutional challenge to provisions of Title III of

the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510 et seq. (Title

III), the principal federal wiretapping statute. Title III prohibits the interception of wire,

oral, and electronic communications. See Title 18, United States Code, §2520, 42 U.S.C.

§1985(3) and §1986, 47 U.S.C. §605, and under the First, Fourth, Fifth, Sixth, and Ninth

Amendments to the U.S. Constitution.. See **Bartnicki** v. **Vopper**, 99-1687, No. 99-1728,

532 U.S. 514 (2001).

2) The date of the alleged offense committed by the FDIC and named defendants is April 14, 2004, April 15, 2004, January 14, 2005, March 31, 2006, and 2007 (continuous wiretap violations).

3) The date the Plaintiff requested complete disclosure is April 14, 2004, April 15, 2004, January 14, 2005, March 31, 2006, and 2007 (continuous wiretap violations).

4) The Plaintiff has not receive by Court Order a suppression of evidence, evidentiary hearing, injunctive relief as required by the wiretap statute.

5) The Plaintiff has and continues to be harmed by the actions of the Defendants.

6) The Plaintiff has and continues to be harmed by the use of evidence collected in violation of the wiretap statute.

7) The Plaintiff has and continues to be unlawfully barred from the Federal Deposit Insurance Corporation.

## CERTIFICATE OF SERVICE AND NOTIFICATION

I **Yolanda C. Gibson-Michaels** (Plaintiff) hereby Certify that on this **10th Day of December, 2007**, that United States Attorney General Michael B. Mukasey was served by mail delivery an Official **Notice of that a Constitutional Question, Statutory and Federal wiretap Statute is at controversy**. I further hereby certify that a copy of the aforementioned **Challenge to the Constitutionality** of the statute was served by mail delivery to **AUSA Claire Whitaker** and named Defendants; and upon the U.S. District Court Judge Ricardo Urbina and that an Amendment has been filed in the United States District Court for the District of Columbia, Washington, D.C.

Copies To:

United States General Attorney, Michael B. Mukasey
Office of the Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC 20006

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia 20190

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C. 20530

SHELIA C. BAIR
CHAIRMAN, FEDERAL DEPOSIT
INSURANCE CORPORATION and
In her individual capacity at
550 - 17th Street, N.W – MB-6028
Washington, D.C. 20429
(202) 898-6974

Douglas R. Fahey
3716 Dalebrook Drive
Dumfries, Virginia 22015-1804
(703) 583-7528

Jenekia J. Johnson
1414 Colony Road
Oxon Hill, Maryland 20748
301-567-3040

3



*(handwritten: FDIC/defendants violated)*

*(handwritten: FDIC Reported to U.S. Congress & Senate)*

## Table 1
### Jurisdictions With Statutes Authorizing the Interception of Wire, Oral, or Electronic Communications
### Effective During the Period January 1 Through December 31, 2004*

*(handwritten: FDIC violated X)*

*(handwritten: DEfendants violated)*

| Jurisdiction | Statutory Citation** | Reported Use of Wiretap in 2004 | Number of Orders Authorized in 2004 |
|---|---|---|---|
| Federal | 18:2510 - 2520 | | |
| Alaska | 12.37 | Yes | 730 |
| Arizona | ARS 13-3010 - 13-3018 | No | - |
| California | Penal Code Sections 629.50-629.98 | Yes | 10 |
| Colorado | 16-15-102 | Yes | 180 |
| Connecticut | 54-41a - 54-41t | No | - |
| Delaware | 11 Del.C.Chap.24 | No | - |
| District of Columbia | 23-541 - 23-556 | Yes | 4 |
| Florida | 934.01 - 934.10 | No | - |
| Georgia | 16-11-64 | Yes | 72 |
| Hawaii | 803-41 - 803-48 | Yes | 33 |
| Idaho | 18-6701 - 18-6710 | No | - |
| Illinois | 720 ILCS SEC.5/108B | No | - |
| Indiana | 35-33.5-3-1 | Yes | 21 |
| Iowa | 808B.1 - 808B.9 | No | - |
| Kansas | 22-2514 - 22-2516 | No | - |
| Louisiana | Act No. 121 3B No.233 15:1308(A)(2) | No | - |
| Maine | 15 M.R.S.A. Sec 709 et seq. | No | - |
| Maryland | 10-401 - 10-411 | No | - |
| Massachusetts | 272-99 | Yes | 34 |
| Minnesota | 626A.01 - 626A.21 | Yes | 23 |
| Mississippi | 41-29-501 | Yes | 1 |
| Missouri | 33-542.400 - 542.424 | Yes | 3 |
| Nebraska | 86-290 - 86-294 | No | - |
| Nevada | 179.410 - 179.515, NRS 200.620 | No | - |
| New Hampshire | 570-A:1 - A:11 | Yes | 8 |
| New Jersey | 2A-156A-1 - 156A-34 | Yes | 13 |
| New Mexico | 30-12-2 - 30-12-11 | Yes | 144 |
| New York | CPL Article 700 | No | - |
| North Carolina | N.C.G.S. 15A-286 | Yes | 347 |
| North Dakota | 29-29.2 | No | - |
| Ohio | 2933.51 - 2933.66 | No | - |
| Oklahoma | 13 O.S. 176.1 - 176.14 | Yes | 1 |
| Oregon | ORS 133.721 - 133.739 | Yes | 16 |
| Pennsylvania | 18 Pa.C.S. Sec 5701-5726 | No | - |
| Rhode Island | 12-5.1-1 - 12-5.1-16 | Yes | 32 |
| South Carolina | SC Code Section 17-30-10 et seq. | No | - |
| South Dakota | 23A - 35A | No | - |
| Tennessee | 40-6-301 - 40-6-311 | No | - |
| Texas | Crim. Proc. Sec. 18.20 | Yes | 36 |
| Utah | 77-23a-1 - 77-23a-16 | No | - |
| Virgin Islands | 5 V.I.C. Sec 4101-4107 | No | - |
| Virginia | 19.2-61 | No | - |
| Washington | 9.73 | No | - |
| West Virginia | 62-1D-11 | No | - |
| Wisconsin | 968.27 - 968.33 | No | - |
| Wyoming | 7-3-701 - 7-3-712 | Yes | 2 |
| | | No | - |

* Pursuant to provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2519.
** Includes only those jurisdictions that enacted legislation during or before calendar year 2004.

*FDIC*
*Ignored Law*

**Gibson-Michaels, Yolanda C.**
**From:** Lawrence, James R.
**Sent:** Wednesday, June 02, 2004 5:33 PM
**To:** Gibson-Michaels, Yolanda C.
**Subject:** RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Thanks for the information.   I enjoyed speaking with you.

-----Original Message-----
**From:** Gibson-Michaels, Yolanda C.
**Sent:** Wednesday, June 02, 2004 5:23 PM
**To:** Lawrence, James R.
**Subject:** FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS


**Subject:** RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Additional information…


# US federal wiretapping laws as of Jan. 2000

Contents:

- CRIMES:
    - 18 USC, PART I, CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS (includes 18 USC 2510-2522)
    - 18 USC, PART I, CHAPTER 121 - STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS (incl. 18 USC 2701-2711)
- CRIMINAL PROCEDURE:
    - 18 USC, PART II, CHAPTER 205 - SEARCHES AND SEIZURES (incl. 18 USC 3117, "Mobile tracking devices"; non-wiretapping sections elided)
    - 18 USC, PART II, CHAPTER 206 - PEN REGISTERS AND TRAP AND TRACE DEVICES (incl. 18 USC 3121-3127)
- TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAMS
    - 47 USC, CHAPTER 9 - INTERCEPTION OF DIGITAL AND OTHER COMMUNICATIONS (incl. 47 USC 1001-1021; most CALEA provisions are in this part)

**Gibson-Michaels, Yolanda C.**

| | |
|---|---|
| From: | Bovenzi, Erica F. |
| To: | Gibson-Michaels, Yolanda C. |
| Sent: | Monday, June 21, 2004 4:57 PM |
| Subject: | Read: FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS |

Your message

| | |
|---|---|
| To: | Bovenzi, Erica F. |
| Subject: | FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS |
| Sent: | 6/9/2004 3:20 PM |

was read on 6/21/2004 4:57 PM.

1

**FDIC**



**Incident Number: 0-0000000186**           **File Number: WASHINGTON**           **Security Level: FDIC Security**

### Incident Details

| | | | |
|---|---|---|---|
| **Category:** | Threats | **Subcategory:** | By Employee |
| **Type:** | Workplace Violence | **Loss/Damage Type:** | |
| **Security Level:** | FDIC Security | **Status:** | Ref. to Management |
| **Police File:** | No | **Police File Number:** | |
| **Occurred From Date:** | 4/14/2004 | **Occurred From Time:** | 11:22:00AM |
| **Occurred To Date:** | | **Occurred To Time:** | |
| **Reported Date:** | 4/14/2004 | **Reported Time:** | 11:59:00AM |
| **Reporting Person:** | Fahey, Douglas | **Supervisor:** | |
| **Org. Rollup 1:** | | **Org. Rollup2:** | **Org. Rollup3:** |
| **Building Name:** | 1717 H St. NW | | |
| **Legal Description:** | | **Number:** | |
| **Local Phone Number:** | | | |

**Street Address:**

**City:**

**Country:**                                    **State/Province:**

**Geo. Rollup1:**                               **Zip/Postal Code:**

**Location:**          3rd Floor          **Geo. Rollup2:**          **Geo. Rollup3:**          Feelings of Threat induced by James T. Cantelme Frame up of Yolanda Gibson michels on April 14, 2004.

**Location Details:**

**Incident Summary:**          Intern felt threatened by words used by employee.

### Incident Persons

| | | | |
|---|---|---|---|
| **Person Name:** | Gibson-Michaels, Yolanda | **Salutation:** Ms. | **Person Status:** |
| **Incident Person Type:** | Employee | **Company Employee:** Yes | **Barring Notice:** No |
| **Comments:** | | | |

### Incident Person Details          (For more Person Details please see the Person Profile Report)

| | | | |
|---|---|---|---|
| **Sex/Gender:** | Female | **Date of Birth:** | **Age:** |
| **Home Address:** | | | |
| **City:** | | | |
| **Country:** | | **State/Province:** | |
| **Home Phone:** | | **Zip/Postal Code:** | |
| **Clothing Type:** | | **Business Phone:** | |
| | | **Clothing Description:** | |
| **Feature Type:** | | **Feature Description:** | |
| **Injured:** | No | **Hospitalized:** | No |
| **Injury Type:** | | **Injury Description:** | |
| **Hospital Name:** | | **Treated By:** | |
| **First Aid:** | | **Cause:** | |
| **Work Time Lost From:** | | **Work Time Lost To:** | |

**FILE NUMBER: WASHINGTON**                      Incident Number: 0-0000000186

After asking GIBSON-MICHAELS to explain some of the specific inconsistencies, THORSTEINSON stopped the interview at 12:55Hrs. and asked for my assurance that nothing from this interview would be used in any potential future criminal proceeding against GIBSON-MICHAELS. I was not able to give him that assurance and we all agreed to contact James LANTELME regarding that issue. I contacted LANTELME by telephone and put him on speakerphone. THORSTEINSON addressed this issue with LANTELME, who stated he would checked with a labor relations attorney and call back. At 13:05Hrs., LANTELME called back and while on speakerphone, said that Jimmy LAWRENCE gave an assurance that nothing from this administrative interview would be used against GIBSON-MICHAELS in any future criminal proceeding. This assurance satisfied THORSTEINSON and the interview resumed.

In all, I addressed the following eleven questions from my interview with GIBSON-MICHAELS. Reference information as to where the relevant transcript information can be found on the tape is included. KEY: JJ = Jenekia Johnson; YGM = Yolanda Gibson-Michaels.

*40. Didn't she tell you she felt very threatened by you because you said that if nothing happens to her, then things would roll over to Jayda.*
ANS: No.

<u>Approximate tape reference information</u>
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

*[handwritten:] Private Bible Discussion inside a closed door OFFICE*

*[handwritten left margin:] Bible Verse!*

<u>Relevant Transcript:</u>
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

<u>DISCUSSION on QUESTION 40:</u>
After listening to the tape, GIBSON-MICHAELS maintained her answer to the question was no, saying that JOHNSON said "believing me or not."

*39. In fact Mrs. Gibson-Michaels, Ms. Johnson told you that she felt very threatened by you didn't she?*
ANS: No. She never felt threatened by me. She said she felt threatened by her sins. I don't know what sins she was talking about.

<u>Approximate tape reference information</u>
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

Relevant Transcript:
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you

**FILE NUMBER: WASHINGTON**

Incident Number: 0-0000000186

*(handwritten left margin: Bible Verse Discussion Lying/Not truthful Bebe)*

*(handwritten right margin: Frame Up by FDIC)*

believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like, you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

**DISCUSSION on QUESTION 39:**

After listening to the tape, GIBSON-MICHAELS initially maintained her answer was still no to this question. She first said she believed JOHNSON told her she felt very threatened yesterday "by you believing me or not" instead of "believe it or not." After review of the tape, SCHULL believed JOHNSON said "believe it or not." GIBSON-MICHAELS subsequently changed her answer to, "Yes, she told me that."

NOTE: No where on the tape does JOHNSON talk about her sins or feeling threatened by anything or anyone other than GIBSON-MICHAELS. .

*31. Did you tell Ms. Johnson that you believed Hecht's could have been threatening her for the money she owed them?*
ANS: No.

**Approximate tape reference information**
Tape Counter Number: 136 and 147
Time into tape: 14 minutes 28 seconds and 15 minutes, 29 seconds

Relevant Transcript (136):
YGM: I was thinking it could have been Hecht's. Cause sometimes people [indistinguishable] threaten people?
JJ: You mean Hecht's?
YGM: Yea, I was thinking. Maybe, I said maybe she had to pay her Hecht's? Cause I don't, Kristian was saying you owe six hundred dollars to Hecht's.

Relevant Transcript (147):
YGM: Okay but you know how everyone's going to look at things the way I look at things. I look at this in fact. The fact well the only thing I'm thinking well maybe you could've gotten into a situation where Hecht's was threatening you or something (indistinguishable)
JJ: No, cause I'm not, haven't been late on a payment and I have never, I haven't been in that situation.

**DISCUSSION on QUESTION 31:**

After listening to the tape, GIBSON-MICHAELS maintained her answer to that question was still no. She said the question wasn't worded properly; that I should have used the word "situation" in my question to her.

*14. Did you suggest to Ms. Johnson that she take a $300 loan from the credit union and pay back Ms. Beard?*
ANS: No.

**Approximate tape reference information**

**FILE NUMBER: WASHINGTON**                    **Incident Number: O-0000000186**

conversation, Yolanda asked "did I think about what she said to me the day before", this was to confess to something that I did not do. I also told her that I went home and tried to think nothing of it.

During a conversation that I had with you 10 minutes later, you asked me was there any contact with Yolanda, from the last time we had spoke. I told you then, that I had just ran into her before I met with you. You asked me what was said by her, and I told you then, that all she said was "did I think about what she said yesterday and I said No". You then gave me a piece of paper which had writing on it, on how you wanted me to approach Yolanda. While you were placing the wire in my purse, you asked me to think of another way of approaching Yolanda. My way was to say hello Yolanda, I'm sorry that I lied to you, and yes I did think about what you has said to me yesterday." (end of e-mail)

Therefore, in summary, the "lie" JOHNSON was referring to on the tape referenced her telling GIBSON-MICHAELS that she had not thought about their previous conversation, when in fact, she had thought about it.

The original tape recording and original statement by GIBSON-MICHAELS were stored as evidence in the Operations Center.

## CONCLUSION

There is evidence to suggest that GIBSON-MICHAELS did make inappropriate comments to JOHNSON, which supports her allegations that she felt threatened by GIBSON-MICHAELS. A copy of this report, a copy of the recorded tape, and a copy of GIBSON-MICHAELS' statement were provided to LANTELME on 3 May 2004.

*[handwritten left margin]* FDIC "4 USe" illegal wire 18 USC 119

*[handwritten right margin]* Bible verse saying I love Jesus on the personal business inside a closed Door office is not a Threat

*[handwritten]* Bible verse inside a closed door office (privacy) is not inappropriate. James T. Lantelme manifested introduced Feelings of threat to Frame-up Yolanda Gibson-Michaels in Violation of 18 U.S.C.

**FILE NUMBER: WASHINGTON**          **Incident Number: 0-0000000186**

---

After asking GIBSON-MICHAELS to explain some of the specific inconsistencies, THORSTEINSON stopped the interview at 12:55Hrs. and asked for my assurance that nothing from this interview would be used in any potential future criminal proceeding against GIBSON-MICHAELS. I was not able to give him that assurance and we all agreed to contact James LANTELME regarding that issue. I contacted LANTELME by telephone and put him on speakerphone. THORSTEINSON addressed this issue with LANTELME, who stated he would checked with a labor relations attorney and call back. At 13:05Hrs., LANTELME called back and while on speakerphone, said that Jimmy LAWRENCE gave an assurance that nothing from this administrative interview would be used against GIBSON-MICHAELS in any future criminal proceeding. This assurance satisfied THORSTEINSON and the interview resumed.

In all, I addressed the following eleven questions from my interview with GIBSON-MICHAELS. Reference information as to where the relevant transcript information can be found on the tape is included. KEY: JJ = Jenekia Johnson; YGM = Yolanda Gibson-Michaels.

*40. Didn't she tell you she felt very threatened by you because you said that if nothing happens to her, then things would roll over to Jayda.*
ANS: No.

Approximate tape reference information
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

*[handwritten: Private Bible Discussion inside a closed door OFFICE]*

Relevant Transcript:
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

DISCUSSION on QUESTION 40:
After listening to the tape, GIBSON-MICHAELS maintained her answer to the question was no, saying that JOHNSON said "believing me or not."

*39. In fact Mrs. Gibson-Michaels, Ms. Johnson told you that she felt very threatened by you didn't she?*
ANS: No. She never felt threatened by me. She said she felt threatened by her sins. I don't know what sins she was talking about.

Approximate tape reference information
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

Relevant Transcript:
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you

18

NETU Union Excerpts

by Ms. Gibson-Michaels comments but by what the investigation would uncover about herself. It is understood that Ms. Johnson decided then to go to Mr. Lantelme and tell him about the conversation from her point of view before Ms. Gibson-Michaels told him about their conversation and what may be uncovered in the investigation Mr. Fahey was going to pursue. Mr Lantelme also says that statements regarding harm coming to Ms. Johnson's baby or her were clearly unprofessional statements, meant to create fear and encourage Ms. Johnson to consider withdrawing her case with Mr. Fahey. [The only way Ms. Johnson could have perceived harm would come to her or her child was if she had something to hide from god. She said herself she knew she had no worries for her or Jayda as she didn't take the money. That the nature of the conversation was biblical and spiritual, and one that Ms. Johnson herself said she has heard many times, should not provoke fear from Ms. Gibson-Michaels but from a higher power.] The entire part of that conversation was discussing a biblical verse and what the bible says, and showing that if a parent does commit a sin, that in fact, that sin can transfer to their children and their children's children for three to four generations as written as the word of god. Why the repeating of something Ms. Johnson has heard so many times before, now she viewed as fearful because it came from Ms. Gibson-Michaels is unclear and makes no sense. If she was fearful, it was fearing for her physical safety, and if that was the case, then why did Ms. Johnson continue talking and privately meeting with Ms. Gibson-Michaels after Mr. Lantelme told her on the 14th of April not to? The pattern of events that followed that conversation on April 14th and April 15th do not show that fear or threatening of any kind were an element of concern to Ms. Johnson. Mr. Lantelme also states that Ms. Gibson-Michaels provided the investigator with inaccurate information. This was not

36

NETU UNION Excerpts

intentionally done. Ms. Gibson-Michaels did not say anything she did not believe was true. She answered everything truthfully and honestly. 43 questions were asked of her. Eleven questions were addressed and six were not answered to Mr. Fahey's satisfaction. These six questions are what has been previously addressed above. Out of the six questions management is using to support the inaccurate information provided to an investigator charges, two of them were not clearly stated and she did not hear what he did. Four of them have been explained. We do not feel it is correct in saying that in not recalling a part of such a lengthy conversation it was done intentionally or to mislead the investigator. Clearly that she did not remember saying those things at all. We are asking that the proposed ten calendar day suspension not be granted as the employee was acting in a mentor capacity and no threat was issued by Ms. Gibson-Michaels to Ms. Johnson what so ever. If there had been a physical threat, the MRT team would have reacted differently in dealing with the situation. We formally are asking that these accusations be removed from the employees personnel file and an apology made to her for the irrational behavior from Mr. Lantelme and the inappropriate treatment of Mr. Fahey.

# MEMORANDUM

TO: Official File

FROM: Contract Investigator B. Cohen

SUBJECT: Investigatory Memorandum Regarding Efforts To Locate Mr. Doug Fahey

DATE: October 31, 2004

During my interview with Mr. Kmetz, he informed me that Mr. Fahey was working with the FBI and undergoing training. Mr. Kmetz informed that Mr. Fahey had worked as a contractor for Securiguard. On October 12, 2004, I called Securiguard in an effort to locate Mr. Fahey. I was told that Mr. Fahey was not employed by Securiguard and was told to contact USEC Corporation. I contacted USEC Corporation and was told that Mr. Fahey was no longer employed by USEC Corporation and that USEC Corporation would not provide me with Mr. Fahey's home telephone number. I asked if USEC Corporation would forward a letter to Mr. Fahey's home. The USEC employee stated they would forward my letter to Mr. Fahey. On October 12, 2004, I sent the attached letter to USEC Corporation. On October 12, 2004, I sent the attached letter to Mr. Fahey at the Federal Bureau of Investigation.

I was informed by a FDIC employee that she thought that Mr. Fahey lived in northern Virginia. There was a telephone listing for a Douglas Fahey in northern Virginia. I made two telephone calls to the number listed and left messages on an answering machine for Douglas Fahey.

To date, Mr. Fahey has not responded to any of my inquiries.

2

**FDIC**
Federal Deposit Insurance Corporation

*[handwritten: intention to incriminate self refuse my right to an Attorney]*

April 21, 2004

TO:       Yolanda Gibson-Michaels
          Information Specialist

FROM:     James T. Lantelme
          Assistant General Counsel

*[handwritten left margin: Contractor]*

SUBJECT:  Mandatory Attendance at Investigatory Meeting

Mr. Douglas Fahey, an investigator with the Division of Administration, notified you by an e-mail on Monday, April 19, 2004, of his need to meet with you for purposes of an investigative interview. Via return e-mail, you stated that "I will not subject myself to any form of investigatory interviews". Instead, you provided him with a written statement.

Please be advised that attendance at this investigative interview is mandatory. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, I direct you to meet with Mr. Fahey at his office for purposes of the interview he has requested, and I direct you to cooperate in the interview. He is available on Friday, April 23rd at 2:00pm. I direct you to contact him to confirm the time for your appointment.

*[handwritten right margin: Threat]*

Failure to attend the interview and cooperate will result in disciplinary action being taken against you.

*[handwritten left margin: Threat failure to ingratiate illegal]*

*[handwritten right margin: Threat / Denied Due Process!! / 1st, 2nd, 4th / Due process, / procedural / Due process / Miranda / rights]*

Cc: Douglas Fahey
    William Kmetz
    Robert Wooding
    Carl Polvinale



**Federal Deposit Insurance Corporation**

Legal Division

April 26, 2004

**TO:**    Yolanda Gibson-Michaels
            Information Specialist

**FROM:**  James T. Lantelme
            Assistant General Counsel

**SUBJECT:** <u>Mandatory Attendance at Investigatory Meeting</u>

Due to an excused absence, you were unable to attend an investigative interview with Mr. Douglas Fahey, an investigator with the Division of Administration, scheduled for Friday, April 23rd at 2:00pm. Mr. Fahey has notified you by an e-mail on Friday, April 23, 2004, that he has rescheduled your interview to Wednesday, April 28th, 2004 at 9:30am at his office in the F Street building, room 1C27C.

Please be advised that attendance at this investigative interview is mandatory. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, I direct you to meet with Mr. Fahey at his office for purposes of the interview he has requested, and I direct you to cooperate in the interview. I direct you to contact him to confirm the time for your appointment.

Failure to attend the interview and cooperate will result in disciplinary action being taken against you.

Cc: Douglas Fahey
     William Kmetz
     Robert Wooding
     Carl Polvinale

NO MAN ABOVE
THE LAW!!

# Judge Rules Against Wiretaps

## NSA Program Called Unconstitutional

*By Dan Eggen and Dafna Linzer*
*Washington Post Staff Writers*

A federal judge in Detroit ruled yesterday that the National Security Agency's warrantless surveillance program is unconstitutional, delivering the first decision that the Bush administration's effort to monitor communications without court oversight runs afoul of the Bill of Rights and federal law.

U.S. District Judge Anna Diggs Taylor ordered a halt to the wiretap program, secretly authorized by President Bush in 2001, but both sides in the lawsuit agreed to delay that action until a Sept. 7 hearing. Legal scholars said Taylor's decision is likely to receive heavy scrutiny from the U.S. Court of Appeals for the 6th Circuit, where the Justice Department will appeal, but some criticized her ruling as poorly reasoned.

Ruling in a lawsuit brought by the American Civil Liberties Union and other advocacy groups in the Eastern District of Michigan, Taylor said that the NSA wiretapping program rode over communications by potential terrorists, violating privacy and free speech rights and the constitutional separation of powers among the three branches of government. She also found that the wiretapping violated the Foreign Intelligence Surveillance Act, the 1978 law instituted to provide judicial oversight of clandestine surveillance within the United States.

"It was never the intent of the framers to give the president such unfettered control, particularly where his actions blatantly disregard the parameters clearly enumerated in the Bill of Rights," Taylor wrote in her 43-page opinion. ".... There are no hereditary kings in America and no powers not created by the Constitution. So all 'inherent powers' must derive from that Constitution."

*See SURVEILLANCE, A18, Col. 1*

# Gonzales Hospital Episode Detailed

## *Ailing Ashcroft Pressured on Spy Program, Former Deputy Says*

By DAN EGGEN and PAUL KANE
*Washington Post Staff Writers*

On the night of March 10, 2004, as Attorney General John D. Ashcroft lay ill in an intensive-care unit, his deputy, James B. Comey, received an urgent call.

White House Counsel Alberto R. Gonzales and President Bush's chief of staff, Andrew H. Card Jr., were on their way to the hospital to persuade Ashcroft to reauthorize Bush's domestic surveillance program, which the Justice Department had just determined was illegal.

In vivid testimony to the Senate Judiciary Committee yesterday, Comey said he alerted FBI Director Robert S. Mueller III and raced, sirens blaring, to join Ashcroft in his hospital room, arriving minutes before Gonzales and Card. Ashcroft, summoning the



James Comey, above, testified of a hospital visit to John Ashcroft.

strength to lift his head and speak, refused to sign the papers they had brought. Gonzales and Card, who had never acknowledged Comey's presence in the room, turned and left.

The sickbed visit was the start of a dramatic showdown between the White House and the Justice Department in early 2004 that, according to Comey, was resolved only when Bush overruled Gonzales and Card. But that was not before Ashcroft, Comey, Mueller and their aides prepared a mass resignation, Comey said. The domestic spying by the National Security Agency continued for several weeks without Justice approval, he said.

"I was angry," Comey testified. "I thought I just witnessed an effort to take advantage of a very sick

See GONZALES, A4, Col. 1

---

March 10, 2004  U.S. Justice Department terminated domestic Surveillance. as _Illegal_!/

2007 DOJ represents the FDIC in the US District Court; Washington in violation of 18 USC-119 CASE NOS: 06-CV-1940, 33, 38+39.

cc: US Senate
    Congress
    DOJ
    Office of Special Counsl
    Ethics Comitte Senate/House

NO MAN IS ABOVE THE LAW!!